## JENSEN v. MONTGOMERY.

No. 1602. (80 Pac. 504).

1. INSOLVENCY—PLEADING.—The allegation of the complainant, in an action by a creditor of a firm seeking to follow its property into the hands of purchasers, that the firm is insolvent, raises no question as to its insolvency at the time of the sale.

2. SAME—PRESUMPTION.—In the absence of an allegation to the contrary, it will be presumed a firm was solvent when it sold its property.

3. RES JUDICATA.—Matters determined by the judgment of a court of competent jurisdiction cannot be questioned in a subsequent action between the same parties.

(Decided April 10, 1905).

APPEAL from District Court, Weber County; Henry H. Rolapp, Judge.

Action by Moroni Jensen against N. R. Montgomery. Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*George Halverson* and *James N. Kimball* for appellant.

*M. D. Lessenger* for respondent.

STRAUP, J.

Appellant, Jensen, brought this action against respondent, Montgomery, to recover from him the sum of $370. The case was tried before the court without a jury. Upon findings of the court judgment was had in favor of respondent and against the appellant, dismissing the action. Appellant appeals.

The substance of the findings is as follows: E. Stevenson and C. W. Taggart were partners in business, under the firm name of Stevenson & Taggart, at Ogden, Utah, carrying on a meat market. Thomas H. Evans obtained a judgment against the said firm on the 8th day of January, 1901, and levied upon and sold certain personal property of said firm, and, after applying the proceeds of said sale in payment of said judgment, a surplus of $80 remained in the hands of the sheriff. The respondent, N. R. Montgomery, obtained a judgment against the said Taggart upon an individual indebtedness of his in the sum of $618, and, upon the issuance of an execution, he levied, on the 21st day of January, upon the interest of the said Taggart in and to certain specific personal property of the said partnership, which was sold, and purchased by the said N. R. Montgomery, for the sum of $40, which was applied upon the said judgment, leaving the greater portion of it unsatisfied. Thereafter H. A. Montgomery purchased from said Stevenson all of his interest (which was one-third) in and to said partnership property, including book accounts. The said N. R. Montgomery purchased all of the interest of the said Taggart (which was two-

thirds) in and to said partnership property. These purchases were all made prior to the 7th day of February. The said H. A. Montgomery went into the possession of said property, and took charge thereof, and conducted the said business. At the time of the said purchases there were outstanding accounts due and owing the said firm aggregating about $500; but the amount thereof was then unknown to the said N. R. Montgomery, nor was it then known to him that there were any solvent outstanding accounts. Soon after these said sales' H. A. Montgomery took possession of said property and meat market, and, with the consent of said N. R. Montgomery, sold for the sum of $290 said specific personal property, of which Taggart's two-thirds interest had been theretofore sold on said execution sale and purchased by N. R. Montgomery in partial satisfaction of his said judgment against Taggart. N. R. Montgomery gave H. A. Montgomery consent to sell the same, upon the understanding that the proceeds thereof should be deposited by the said H. A. Montgomery in bank. After the said sale N. R. Montgomery demanded of said H. A. Montgomery his two-thirds interest in said proceeds of sale, but the latter declined to pay it, on the ground that there might be outstanding debts of said old firm of Stevenson & Taggart for which he, said H. A. Montgomery, might be liable, and asserted that the said $290 and the said $80 in the hands of the sheriff was all the former assets of the said firm of Stevenson & Taggart, and, in so doing, withheld from the said N. R. Montgomery the fact that there were about $500 outstanding accounts due said old firm, and of which he, the said H. A. Montgomery, had collected the sum of $100. Thereupon it was proposed by the said H. A. Montgomery that, if the said N. R. Montgomery would indemnify him against claims of creditors of the said firm of Stevenson & Taggart, he, the said H. A. Montgomery, would pay over to N. R. Montgomery the said proceeds of $290 and $80, or the sum of $370. The said N. R. Montgomery, relying upon and believing the representations so made to him were true, and for the purpose of indemnifying him, and for no other pur-

pose, made and delivered to him the following receipt and memorandum in writing:

"February 7th, 1901. Received of H. A. Montgomery the sum of $370.00, proceeds of the sale of the property of E. Stevenson and C. W. Taggart, copartners under the firm name of Stevenson & Taggart, copartnership business under the firm name of Excelsior Meat Market, and I hereby promise and agree to pay the debts of said firm as same may be agreed upon by Taggart and Montgomery or be established by suit, not exceeding the above sum. N. R. Montgomery."

That the said representations were false, and were so made by the said H. A. Montgomery to deceive the said N. R. Montgomery, and he was deceived thereby and induced to make the said receipt and writing. On March 23, 1901, appellant, Moroni Jensen, in an action wherein he was plaintiff and the said E. Stevenson and C. W. Taggart, as copartners under the firm name of Stevenson & Taggart, were defendants, obtained a judgment in the justice's court against the said C. W. Taggart for the sum of $292 and costs, which judgment was based upon a debt of the firm of Stevenson & Taggart. On the 2d day of January, 1902, appellant caused his said judgment to be docketed in the district court, and thereafter demanded payment thereof from the said N. R. Montgomery; but he declined to pay the same, or any part thereof . On the 30th of April, 1902, an execution having theretofore issued upon the said judgment the said respondent in said action was summoned as garnishee thereon to answer touching all property and assets in his hands belonging to the firm of Stevenson & Taggart, and such proceedings were had thereon whereby on said thirtieth day of April a judgment was duly made and entered in said action in favor of said respondent and against appellant, and whereby it was held that the respondent was not liable as garnishee, and that the said judgment is in full force and effect, and no appeal has been had therefrom.

1. Appellant claims that some of these findings are not supported by the evidence. It is not necessary that we here set forth the evidence, which supports the material findings complained of as being unsupported. Suffice it to say, upon examination of the record, we are satisfied there is sufficient evidence to support the findings.

2. It will be observed from the foregoing findings that appellant was a firm creditor of Stevenson & Taggart, but when, prior to his judgment of March 23, 1901, he became such a creditor, is not alleged in the complaint and is not found by the court; that on January 19, 1901, Stevenson sold all his interest in and to the partnership property to H. A. Montgomery, and about the same time, and prior to February 7, 1901, Taggart sold all his interest in and to the partnership property to N. R. Montgomery, who was also an individual creditor of Taggart. The good faith of and valuable consideration for these sales are unquestioned. It is, however, claimed that the court failed to find as to the insolvency of the firm of Stevenson & Taggart at the time of their respective sales of partnership property to H. A. and N. R. Montgomery. It is asserted by appellant that said firm was then insolvent, and he declares the law to be, in such case, he, being a firm creditor, had a certain equity in and to the firm property or former assets of the firm, and a right to follow the partnership property or the funds and proceeds thereof in the hands of third parties, and hence the right of appellant to demand of respondent and have paid his debt out of the said $370 in the hands of the latter.

In the first place there is no allegation in the complaint that said firm was insolvent at the time of said sales and delivery of said partnership property. These sales were made, one on January 19, 1901, and the other prior to February 7, 1901. The allegation in the complaint is "that the said firm of Stevenson & Taggart are wholly insolvent, and have no property out of which said judgment (appellant's) can be made." The said complaint was verified, and filed June 6, 1903, more than two years after the said sales of said partnership property. An allegation in the complaint that said

firm in June, 1903, was insolvent, is not at all an allegation that it was insolvent at or about the time of said sales, made more than two years prior thereto. The materiality, if at all, of insolvency of said firm was at the time of said sales. The fact of its insolvency more than two years thereafter and at the time of the filing of said complaint was not alone sufficient. Therefore the court was not required to find thereon. As solvency rather than insolvency will be presumed, in the absence of any allegation in the complaint and finding of the court that said firm was insolvent at the time of said sales, we must presume it then was solvent. Besides, there is no allegation in the complaint, nor any finding of the court, as to when appellant became a creditor of said firm. There is no allegation or finding of any kind that he was a creditor at the time of said sales, or that the firm was then owing him anything. We, however, are not called upon to decide the question when and under what circumstances a firm creditor has or may have an equity in or may follow partnership property and former assets of a partnership or its proceeds in the hands of a third party; for it appears by the record and the findings of the court that this very matter was litigated to final judgment and determined by a court of competent jurisdiction between these same parties in another action, and there decided against appellant and in favor of respondent. This very thing, therefore, has been once adjudicated, so pleaded, and so found by the court; and if, upon examination of the merits, we should reach a conclusion favorable to appellant, this former adjudication would preclude us from reversing the case.

3. It is also claimed that appellant had the right to maintain this action and recover from respondent on the theory that the promise in writing made by the latter to H. A. Montgomery was for appellant's benefit as a firm creditor. But this was a matter which was also litigated and determined against appellant in the said former action and proceeding. Furthermore, the finding of the court, well supported by the evidence, is to the effect that the said promise was made alone for the benefit of H. A. Montgomery, and as and for an in-

demnity to him, and for no other purpose. The said claim made by appellant cannot, therefore prevail against such finding.

The judgment of the lower court is therefore affirmed, with costs to be taxed against appellant.

BARTCH, C. J., and McCARTY, J., concur.